IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,                                                   Case No.: 3:09-CR-00091-LC-1

v.

**PEDRO BENEVIDES,**

    Defendant.

_____/

## DEFENDANT'S REJOINDER TO GOVERNEMNT'S SUPPLEMENTAL REPLY

    Comes Now, Defendant Peter Benevides by and through his undersigned counsel and makes the following rejoinder to the government's Supplemental reply:

    1. There is absolutely no provision in the Federal Rules of Criminal Procedure or the Local Rules of the United States District Court for the Northern District of Florida for a Supplemental Reply, nor did the government bother to seek leave of Court before filing this pleading.

    2. The government has again chosen to disregard 18 U.S.C. Sec. 3142 (f), requiring that a party claiming to have new information material to the detention of a person file a motion to reopen the hearing. None of the information in the government's Supplemental Reply is newly discovered evidence within the meaning of Sec. 3142 (f). The government classifies as "new" whatever its witnesses have told them during their most recent interview, regardless of how old the information may be. Had the government exercised due diligence this information would have been presented at the September 23-29 hearing.

    3. Reliance upon untested hearsay previously available to the government at the time of the detention hearing would violate the constitutional rights of Mr. Benevides to confrontation, cross-examination, and due process, as well as his rights under the Bail Reform Act.

4. The affidavit of Detective Marvin Miller attached to the Supplemental Reply pertains to the allegedly false Florida Identification Card that is the principal subject of the Supplemental Reply. According to the affiant, this ID card was issued fifteen years ago (1994), or fourteen years before the 2008 investigation that led to Mr. Benevides' arrest. Assuming *arguendo* that Mr. Benevides had this card made for himself in 1994, there is no evidence whatsoever of his having used it during the time frame of this case. Therefore it has no bearing on his present intentions and is irrelevant to the issue flight risk.

5. The Supplemental Reply should be returned to the government and struck from the record.

### Incorporated Memorandum of Law

The government violated Local Rule 7.1(C)(2) in its initial Reply by failing to show good cause, and by filing its Reply Memorandum before obtaining leave of court. This was noted in Mr. Benevides' November 9, 2009, Opposition to Government's Motion to File Reply [Doc. 38]. Now the government has gone several steps further by inventing a new pleading called a Supplemental Reply and not even making a pretense of seeking, and waiting for leave of court.

As previously stated the only procedure for bringing new information before the court regarding the detention issue is a motion to reopen the hearing pursuant to 18 USC Section 3142(f). Plainly the reason for requiring such a motion is to ensure that any new information be subject to the same rules applicable to the "old" information offered at the original detention hearing. Common sense as well as due process dictate this conclusion, otherwise a movant -- in this case the prosecutor--could render the detention hearing meaningless. This is exactly what has been has attempted in this case by two successive attempts to nullify the hearing through late filling of additional, untested allegations. The magistrate judge held a four-day detention hearing and provided the government more than ample opportunity to present a complete case, including

Larry Frederick. If SA Humphries had no time to speak to Frederick during those four days, or during the recess September 26 through 28, Frederick could have been interviewed by any of the several other government agents who attended the hearing.

The government's Supplemental Reply contains no newly discovered evidence, i.e., evidence that was *previously unavailable to the moving party with the exercise of due diligence*. Government agents merely interviewed Larry Frederick (for at least the third time) and labeled his latest revelations as "new." The cases under Section 3142(f) hold that the moving party must possess evidence that was not available to him at the time of the original detention hearing through the exercise of due diligence. *United States v. Stanford,* 2009 WL 2591361 (5th Cir. 2009); *United States v. Rodriguez-Adorno*, 606 F.Supp. 2d 232,238 (D. Puerto Rico 2009), citing *United States v. Peralta*, 849 F. 2d 625, 626(D.C. Cir. 1988). This is analogous to the standard for motions for a new trial under Rule 33 (b) (1), *Fed. R. Crim. P.*, which denies relief to the moving party unless he can show that with the exercise of due diligence he could not have obtained his "new" evidence earlier. United *States v. Bell*, 2009 WL 3488728 (11th Cir); *United States v. Meinster*, 488 F.Supp 1342 (S.D.Fla. 1980), *aff'd* 664 F.2d 971(1981), *cert denied* 457 U.S. 1136(1982). This requirement is based on common sense and the need for finality. A party should not be permitted to reopen proceedings by dredging up information from sources that were available to that party at the time of the original proceedings. No defendant would be permitted to do this, and the same rule applies to the government.

The affidavit of Detective Miller, who investigated the Florida ID Card turned over by Larry Frederick, avers that this card (Exhibit A) was issued in 1994 -- fourteen years before the initiation of the 2008 investigation that led to Mr. Benevides' arrest. Assuming *arguendo* that in 1994 Mr. Benevides did cause Exhibit A to be prepared, neither Larry Frederick nor the Confidential Source have said that Mr. Benevides carried or used the card during 2008-2009.

Apparently the CS found it while rummaging in Mr. Benevides' office files. The existence of a 15 year-old ID card among Mr. Benevides' effects does not have any tendency to suggest that he plans to flee from this case, which did not commence until the 2008 Pensacola marijuana investigation, according to the government. The ID card is therefore irrelevant.

According to the Supplemental Reply, the Florida ID card was originally discovered by the Confidential Source (CS), who then showed it to Frederick. The government has been working with the CS at least since August 2009, so knowledge of the existence of the ID card was available to the government since that time. The Supplemental Reply does not disclose the date on which the CS first showed Frederick the ID card, except to say this occurred "during the time when both these individuals [Frederick and the "voluntary cooperating individual"] were still employees of the defendant." Supplemental Reply at p. 2. This indicates Frederick must have seen and made a copy of the card not later than June 2008, because his employment terminated that month. The Supplemental Reply does not disclose the date on which Larry Frederick first mentioned the ID card to a government agent, except to state vaguely that he "previously indicated" to SA Evans, IRS/CID Pensacola that "he had been shown a Florida identification card belonging to the defendant...." *Id.* Although Frederick allegedly didn't get around to providing a copy of the ID card to SA Evans until November 6, 2009, this date is not significant because it would have been available much earlier had the government exercised due diligence.

SA Humphries' affidavit avers that he interviewed Larry Frederick on October 16. His specific purpose in contacting Frederick was that defense counsel had made "accusations" during the hearing, and the government wished to use Frederick's statement to counter the defense. Frederick was then re interviewed on October 28 for the same purpose. It is hard to believe that the ID card would not have been brought to light during either or both of the previous interviews.

It is especially hard to believe the ID card wasn't mentioned considering that Frederick claimed he was so concerned "that his employer would have a false identification card and a Georgia birth certificate…. [that he] decided to make a copy of both documents in case he needed proof of what he saw later." *Id. at p. 3*. If he began collecting "proof" against Mr. Benevides in June 2008, why would he withhold it?

Another item of "newly discovered evidence" supposedly came to light when government counsel was "informed by SA Humphries and SA Evans that in their on going interviews with Mr. Frederick, he recently advised them that on or around June 18, 2009, the defendant told Mr. Frederick that Heather Perkins was 'going up north' to appear before an 'indictment hearing,' and that the defendant 'needed a place to hide' in case a warrant was issued for his arrest." *Id.* at p.4. It appears that federal agents had been interviewing Mr. Frederick not just on October 16 and 28, but on a continuous basis. Yet the government does not disclose when the agents received "new" evidence concerning the defendant's Clearwater hideout at the Dockside Condominiums. With due diligence they should have found out about this prior to September 29. In any event, Frederick's story here is suspect because Mr. Benevides owned these condominium units in his own name and they would have been an unlikely place to hide from a federal arrest warrant.

## Conclusion

The government's Supplementary Reply should be returned unread because it is completely outside the scope of the Local Rules which specify that a party's last pleading is a Reply -- and only for good cause, and with leave of court. In any event, the use of replies of any kind in the present context violates 18 USC Sec. 3142(f) which requires a motion to reopen the detention hearing when a party seeks to present new evidence allegedly material to detention. However, in this case there are no grounds for a 3142(f) motion because its information is not

newly discovered. All of the information the government seeks to offer was available prior to September 29 with the exercise of due diligence. Finally, Larry Frederick's evidence is irrelevant, and its veracity is suspect. Under the circumstances outlined above the acceptance of this information by proffer and without cross-examination violates the defendant's Fifth and Sixth Amendment rights to due process and confrontation.

WHEREFORE, based on the arguments and authorities above the government's Supplemental Reply should be disregarded in its entirety. In the alternative, should this Court elect to consider the government's information, it should be presented through witnesses subject to cross-examination.

Respectfully submitted,

BARRY A. COHEN
Florida Bar No.: 0096478
bcohen@tampalawfirm.com
TODD FOSTER
Florida Bar No.: 0325198
tfoster@tampalawfirm.com
COHEN, FOSTER & ROMINE, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: 813-225-1655
Facsimile: 813-225-1921
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20 day of November, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send an electronic notice to **Thomas Swaim, AUSA, Len Register, AUSA, and Corey Smith, AUSA**.

BARRY A. COHEN
Florida Bar No.: 0096478